THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RIKER MCKENZIE-EL,

    *Plaintiff*,

v.

PORTS OF AMERICA, *et al.*,

    *Defendants*.

Civil Action No. ELH-19-1980

## MEMORANDUM OPINION

Plaintiff Riker McKenzie-El filed this employment discrimination action against defendants Ports of America ("PAC"), Steamship Trade Association of Baltimore, Inc. ("STA"), and International Longshoremen's Association ("ILA"), alleging harassment, discrimination, and retaliation on the basis of race and sex. ECF 1 (the "Complaint"). According to plaintiff, he has worked as a longshoreman and elected union representative at the Port of Baltimore since 1977, during which time he has been subjected to discriminatory hiring and promotion practices and retaliation.

The Complaint contains four counts.[1] Count I alleges racial discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. "Count Two" lodges a claim for sex discrimination under Title VII.[2] In Count III, plaintiff asserts a claim for

---

[1] The Complaint does not specify which claim is lodged against which defendant on the basis of what conduct, referring instead to a singular "Defendant."

[2] Although plaintiff refers to the second count as Count Two, I shall hereafter refer to it as Count II, for consistency with the other counts.

retaliation under Title VII. And, Count IV alleges racial discrimination, in violation the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.*

The docket does not reflect that plaintiff has served either PAC or ILA. STA has moved to quash service of process. ECF 7. In addition, STA filed a motion to dismiss for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). ECF 10. The motion is supported by a memorandum of law (ECF 10-1) (collectively, the "Motion") and two exhibits. ECF 10-2 to ECF 10-3. Plaintiff agrees to the dismissal of Count II, alleging sex discrimination, but otherwise opposes the Motion. ECF 11 (the "Opposition"). He has also submitted five exhibits. ECF 12-1 to ECF 12-5. STA has replied (ECF 13, the "Reply"), and submitted seven exhibits. ECF 13-1 to ECF 13-7.

The Motion is fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion. Accordingly, the motion to quash shall be denied as moot.

## I. Background[3]

Mr. McKenzie-El, an "African American and Asiatic male," has worked at the Port of Baltimore (the "Port") as a longshoreman since August 11, 1977. ECF 1, ¶ 10; *see id.* ¶¶ 13-14. According to plaintiff, he is employed by "Ports of America and the Steamship Trade Association of Baltimore," both of which "are members of STA, a multi-employer association representing employers in the Port of Baltimore." *Id.* ¶ 12. PAC "is a large terminal operator and stevedore"

---

[3] Given the procedural posture of the case, I shall assume the truth of the facts alleged in the Complaint. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). The Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

that engages in the business of "loading and unloading cargo from ships and other operational activities." *Id.* ¶ 16. STA "provides labor management relations, payroll processing, [and] work hours database management for those employed in the maritime trade industry." *Id.* ¶ 17.

In addition to plaintiff's duties as a longshoreman, he is a member of Local 333, the Port's affiliate of the ILA. *Id.* ¶ 11. The ILA is a labor union that represents longshoremen, clerks, checkers and maintenance employees working in ports on the east and gulf coasts of the United States. *Id.* ¶ 18. The relationship between STA and Local 333 members is governed by a collective bargaining agreement ("CBA"). *Id.* ¶ 12.

Plaintiff claims "a pattern and practice of discrimination, against African American and Asiatic males, by the Defendants," *id.* ¶ 22, which "spans training, promotions, and the conditions of employment." *Id.* ¶ 23. According to plaintiff, the Port's history of discrimination stretches back to 1970, when United States District Judge Alexander Harvey II[4] entered a Consent Decree ordering the implementation of a non-discriminatory seniority system, mandated the merger of Local 829 and 858 (Local 333's predecessors), and put into place various reporting requirements. *See id.* ¶¶ 25-27; *see also United States v. Int'l Longshoremen's Assoc.*, 319 F. Supp. 737 (D. Md. 1970). Plaintiff asserts that, pursuant to the Consent Decree, Local 333 should have adopted a race-neutral seniority system, and "should have taken affirmative steps to require that the stevedoring companies in the Port" make employment decisions "on the basis of ability and seniority," as opposed to race. ECF 1, ¶ 28; *see generally Int'l Longshoremen's Assoc.*, 319 F. Supp. 737.

However, plaintiff alleges that the promotion system implemented by Local 333 is not race neutral. Labor at the Port is supplied to stevedoring companies for the purpose of loading and

---

[4] Plaintiff erroneously refers to Judge Harvey as Alexander Harvey, III. *See* ECF 1, ¶ 25.

unloading ships in accordance with what plaintiff calls a "'gang system.'" ECF 1, ¶ 30. Under this system, Local 333 assigns new members to a particular gang, where they begin to earn seniority. *Id.* ¶ 31. When a regular vacancy occurs in a gang, for example because of retirement or death, the "gang carrier notifies the labor coordinating process," *id.* ¶ 33, and then Local 333's "Seniority Board selects the new member based on seniority, qualifications, and the pool of eligible individuals from the Baltimore vicinity and surrounding areas." *Id.* ¶ 34. According to plaintiff, "the Seniority Board is non-compliant with the Consent Decree Order and thus further violates Title VII protected rights." *Id.* ¶ 38. Specifically, plaintiff alleges, *id.* ¶ 39:

> The industry has failed to promote African American and Asiatics into employee leadership positions and opportunities. Subjective testing criteria, standards for imposing discipline, drug and alcohol policies, training programs, and clearance credential requirements have a disparate impact on African American and Asiatics or have been enforced in a racially discriminatory manner.

Further, plaintiff asserts that the Port's hiring practices "discriminate against African American and Asiatic employees in breach of the CBA." *Id.* ¶ 43. According to plaintiff, prior to 2006, the Port's hiring system complied with the CBA's seniority-based promotion system. *Id.* ¶ 40. Under the pre-2006 system, members of Local 333 "were hired for skilled positions with Employers based on a port-wide seniority system, which allowed employees to bid on permanent positions without regard for job classifications. . . ." *Id.* ¶ 41. In 2006, however, STA and Local 333 agreed to new hiring provisions that allocate positions to workers "based on seniority in each job category," *id.* ¶ 42, which plaintiff claims disadvantages Black employees. *Id.* ¶ 43.

Plaintiff asserts that he has "consistently been a vocal advocate against the discrimination and unfair treatment of African American and Asiatic longshoremen at the Port." *Id.* ¶ 58. To that end, he has filed complaints with Local 333, the Equal Employment Opportunity Commission ("EEOC"), and "pursued other litigation in opposition to [defendants'] various employment

practices[.]" *Id.* ¶ 57.  As a result, the ILA allegedly "created a targeted scheme to silence Plaintiff and the vocal Union leadership by repeatedly removing Plaintiff from office and interfering with union leadership conducting official business." *Id.* ¶ 59.

Plaintiff has served in numerous leadership positions with Local 333.  He was elected by the Local 333 membership as the "Walking Delegate" in 1985, the "Wage Scale Delegate" in 1986, the "Vice President of the Union and Convention Delegate" in 1987, a "member of the Executive Board" in 2006, and "President" in 2008.  *Id.* ¶ 60.  However, plaintiff claims that in 2010, the ILA "removed" plaintiff from his role as President by "utilizing court sealed documents against him to his detriment." *Id.* ¶ 62.  The same year, despite plaintiff running again for President and receiving "an overwhelming majority of the votes," *id.*, the ILA "refused to recognize Plaintiff's reelection, disqualified him from consideration, and installed his defeated opponent, a Caucasian male, as President." *Id.* ¶ 63.

That President was removed in late 2011, creating a vacancy for Vice President.  *Id.* ¶ 64. Thereafter, plaintiff was elected to the Vice President position.  *Id.*  He served in that role until December 2012, when he was again  elected President.  *Id*. ¶ 65.

Plaintiff served as President of Local 333 until November 2014, when the ILA "put Local 333 under trusteeship," *i.e*., "under the control of itself, ILA." *Id.* ¶¶ 65, 66.  According to plaintiff, the ILA justified the trusteeship as necessary to establish which members were in good standing and were therefore eligible to vote on contracts.  *Id*. ¶ 67.  In place of plaintiff, the ILA appointed Vice President Wilbert Rowell, a Caucasian male, to serve as the temporary trustee.  *Id.*

During this time, "the trustee and selected employees" negotiated the terms of the CBA, in lieu of "the Union's democratically-elected" representatives.  *Id.* ¶ 68.  Plaintiff alleges that Scott Cowan was chosen to draft contract proposals and negotiate on behalf of Local 333.  *Id.* ¶ 69.

According to plaintiff, Mr. Cowan was the only Caucasian member of the incumbent Executive Board, and "he was the only non-suspended board member" asked to help with "crucial" negotiations. *Id.* Plaintiff also asserts that Mr. Cowan "outwardly opposed Plaintiff's leadership, and he expressed an intention to run against McKenzie in the upcoming election." *Id.*

On February 11, 2015, the ILA held a membership meeting to discuss its CBA proposal. *Id.* ¶ 70. The ILA allegedly "broke many of [its] own rules and practices." *Id.* For example, it held the meeting in the employer's terminal rather than the union hall, and it failed to mail copies of the contract proposal to members prior to the meeting. *Id.*

On February 13, 2015, the membership voted to reject the contract proposal on February 13, 2015. *Id.* ¶ 71. The following day, the ILA's "Trusteeship Hearing Committee issued a report recommending that the temporary trusteeship be continued, and Mr. Rowell was later appointed the permanent trustee." *Id.* ¶ 72. This course of conduct, plaintiff alleges, violated Title VII, 42 U.S.C. § 1981, and is "contrary to the 1971 consent decree's adoption of a race-neutral seniority system as well as its broad injunction against racial discrimination in longshore employment." *Id.* ¶ 73.

With respect to PAC specifically, plaintiff alleges that on August 8, 2016, PAC demanded that he submit to a urinalysis following an accident. Plaintiff complied, but PAC violated "ILA STA industry drug and alcohol policy" by "rejecting documented proof that Plaintiff supplied a urinalysis within the three (3) hour window submission requirement." *Id.* ¶ 75. According to plaintiff, PAC's refusal to accept his documentation is "an example of Defendants' discriminatory treatment towards Plaintiff" because "Caucasian employees have not been scrutinized and penalized under similar circumstances." *Id.* ¶ 75.

On October 12, 2016, plaintiff filed a charge with the EEOC. ECF 10-2 ("EEOC Charge").[5] In the EEOC Questionnaire, Mr. McKenzie-El named STA as his employer. *Id.* at 3. Notably, he checked boxes on the form identifying retaliation, age, and disability as the basis for his claim. *Id.* But, he did not check the box for race. *Id.*

In the narrative section of the form, the claimant is asked to provide the "particulars." *Id.* Plaintiff stated that on August 8, 2016, he was subjected to a drug test "for which [he] passed after being accused of an accident which did not occur." *Id.* He stated, *id.*: "I believe this is in retaliation for my opposition of race discrimination at the above named employer." According to plaintiff, "[s]imilarly situated white employees have not been subjected to this treatment." *Id.* Further, he alleged that although he was receiving worker's compensation for a work-related injury, which "was later determined to be a disability," he has "been denied access to the above named employer . . . ." *Id.* And, he complained that "white employees who are receiving worker's compensation have been allowed access to the employer." *Id.* In addition, he alleged that he had been "subjected to age based harassment by Jack Roekell, Terminal Manager and Scott Cowan, President of Local ILA 333 which took the form of being consistently asked when [he was] going to retire." *Id.*

## II.     Standards of Review

### A.  Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); s*ee also The Piney Run Preservation Ass'n v. Cty. Comm'rs of*

---

[5] In his Complaint, plaintiff alleges that he filed a charge with the EEOC on February 16, 2017. ECF 1, ¶ 7. However, plaintiff has not attached this charge as an exhibit, nor has he provided any details concerning the charge.

*Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Hutton v. Nat'l Bd. of Exam'rs Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns*, 585 F.3d at 192. Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck*, 848 F.3d at 270). In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

STA challenges the Court's subject matter jurisdiction as to Counts I, II, and III, on the ground that plaintiff failed to exhaust his administrative remedies. ECF 10-1 at 8. However, a plaintiff's failure to exhaust his administrative remedies before filing a Title VII claim does not strip a court of jurisdiction. In the case of *Fort Bend County v. Davis*, ___ U.S. ___, 139 S. Ct. 1843 (2019), the Supreme Court held that exhaustion under Title VII is not jurisdictional. *Id.* at 1846. Exhaustion is instead a "claim-processing rule[] that must be timely raised to come into play." *Id.* Accordingly, whether plaintiff has satisfied the exhaustion requirement is not properly assessed under Rule 12(b)(1).

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014)

(per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy

sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'"  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).  Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal

rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted).  *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The Motion is supported by two exhibits.  They are the EEOC Charge (ECF 10-2) and an "Opinion and Award Of The Arbitrator," denying a grievance filed by ILA on behalf of Mr. McKenzie-El against STA, stemming from the drug-testing incident of August 2016.  ECF 10-3. Because the EEOC Charge is integral to the Complaint, I may refer to it without converting the Motion to one for summary judgment.  In contrast, I may not consider the arbitral opinion as it is not referenced in the Complaint and there is no indication that it is publicly available.

The Opposition is supported by five exhibits (ECF 12-1 to ECF 12-5), all of which are letters or emails between Mr. McKenzie-El and STA.  The Reply contains seven exhibits, which include the EEOC Charge (ECF 13-1); plaintiff's wage history (ECF 13-2; ECF 13-4); an affidavit from David P. Hartman, Vice President of STA (ECF 13-3); a redacted version of plaintiff's W-2

(ECF 13-4); plaintiff's "Port ID" (ECF 13-6); and excepts of the CBA between STA and Local 333, effective October 1, 2004, through September 30, 2010. ECF 13-7. With the exception of plaintiff's EEOC Charge (EEOC 13-1), none of these documents is referenced in the Complaint or appears to be publicly available. Therefore, I shall not consider these exhibits in resolving the Motion.

### C. Title VII and § 1981 Generally

Relying on Title VII and 42 U.S.C. § 1981, plaintiff lodges claims for race discrimination, sex discrimination, and retaliation.

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. The phrase "terms, conditions or privileges of employment" is "an expansive concept." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (quotation marks and citation omitted). Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e–3; *see e.g.*, *Evans v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. Gen. Servs. Admin.*,

14

425 U.S. 820, 832 (1976) (federal employees); *see also McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016). To do so, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). This period is extended to 300 days in a deferral state, such as Maryland. *See Garnes v. Maryland*, RDB-17-1430, 2018 WL 276425, at *4, n.8 (D. Md. Jan. 3, 2018); *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007), *aff'd*, 267 F, Appx 256 (4th Cir. 2008).

However, as noted, exhaustion under Title VII is not jurisdictional. *See. Davis*, 139 S. Ct. at 1846. Rather, it is a "claim-processing rule[] that must be timely raised to come into play." *Id.*

Section 1981(a) of 42 U.S.C. provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens[.]" Among other things, "§ 1981 . . . prohibits discrimination in employment on the basis of race." *Yashenko v. Harrah's N.C.* Casino Co., LLC, 446 F.3d 541, 551-52 (4th Cir. 2006); *see Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination . . . on the basis of race."); *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018). This includes a claim for employment discrimination. *See, e.g.*, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 (2004) (addressing hostile work environment claim brought pursuant to § 1981). A claim for disparate treatment on the basis of race brought under § 1981 proceeds under the framework set forth by Title VII. *See Goode*, 807 F.3d at 626 (analyzing Title VII and § 1981 claims under *McDonnell Douglas*); *Parks v. La.-Pac. Corp.*, 400 F. Supp. 3d 393, 412 (W.D.N.C. 2019) (assessing § 1981 claim under *McDonell Douglas*).

In general, *at trial* a plaintiff "may establish a discrimination claim under Title VII through two avenues of proof." *Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam) (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 569 U.S. 206, 228-29 (2015) (construing the Pregnancy Discrimination Act); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (discussing the *McDonnell Douglas* framework).

As indicated, the avenues of proof pertain to trial. At this juncture, reference to these methodologies merely serves to inform a court's evaluation of a motion to dismiss or for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden – shifting framework established in *McDonnell Douglas Corp*"); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*").

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

If the plaintiff chooses to proceed *at trial* under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Cent. Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

To state a prima facie claim of racial discrimination under *McDonnell Douglas*, the plaintiff must allege "'(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Goode v. Cent. Va. Legal Aid Soc., Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012)); *see also Matias v. Elon Univ.*, 780 F. App'x 28, 31 (4th Cir. 2019); *Rayyan v. Va. Dep't of Transp.*, 719 F. App'x 198, 203 (4th Cir. 2018).

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650

F.3d at 336; *see Reeves*, 530 U.S. at 142; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original). This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional

discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731. At the motion to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id*. at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of

race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief under Title VII . . . ." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

### III. Discussion

Defendant moves to dismiss Counts I, II, and III due to plaintiff's failure to exhaust his administrative remedies. ECF 10-1 at 9-12. As to all counts, under both Title VII and 42 U.S.C. § 1981, STA contends that plaintiff has failed to allege plausible discrimination and retaliation claims. *Id.* at 12-13; ECF 13 at 9-13. As noted, plaintiff agrees to the voluntary dismissal of Count II. ECF 11-1 at 4. However, as to the remaining counts, plaintiff argues that he has satisfied the requirements of administrative exhaustion and has stated viable claims against STA. *Id.* at 8-12.

### A. Exhaustion

STA asserts that plaintiff failed to exhaust his administrative remedies with respect to Counts I, II, and III. ECF 10-1 at 9-12. According to STA, the allegations lodged in Counts I and II are materially different from the EEOC Charge, which focuses solely on the alleged retaliatory drug test. *Id.* at 11. STA also asserts that Count III is subject to dismissal on exhaustion grounds because the EEOC Charge is directed against STA, but the allegations in Count III concern PAC. *Id.* at 12.

Plaintiff counters that he has exhausted his administrative remedies and therefore his claims are properly before the Court. ECF 11-1 at 8. Although plaintiff acknowledges that his EEOC Charge "is focused on a drug test," plaintiff maintains that "a Charge is only a high level summary of discriminatory events and acts alleged by a Complaint." *Id.* In his view, he "could

not have discussed retaliation for opposition to discrimination based on race, without discussing race discrimination." *Id.* at 4.

As mentioned, a plaintiff must file a charge with the EEOC before filing suit in a federal court under Title VII. 42 U.S.C. § 2000e–5(f)(1) (2006) (permitting civil suits by the "person claiming to be aggrieved" after the filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see, e.g.*, *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Puryear v. Cty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000). The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it "serves twin objectives: protecting agency authority in the administrative process and 'promot[ing] efficiency' in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (alteration in *Stewart*) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)); *see also Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406-07 (4th Cir. 2013).

As indicated, the Supreme Court recently held that Title VII's administrative exhaustion requirements are not jurisdictional. *Davis*, 139 S. Ct. at 1846. Therefore, a plaintiff's failure to exhaust his administrative remedies before filing suit does not itself prevent the court from hearing the case. However, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Thus, while a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Stewart*, 912 F.3d at 701-02 (holding that Title VII's mandatory 180-day waiting period requirement is a mandatory claim-processing rule and further considering whether dismissal was appropriate under Rule 12(b)(6) for plaintiff's alleged failure

to adhere to the rule); *Kenion v. Skanska USA Bldg., Inc*., RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

The requirement of administrative exhaustion limits the scope of a plaintiff's federal lawsuit in that it precludes a plaintiff from asserting claims in litigation that did not appear in his EEOC submission. *Sydnor*, 681 F.3d at 593. Thus, "when the claims in [the] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge,' they are procedurally barred." *Parker v. Reema Consul. Servs., Inc*., 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Chacko*, 429 F.3d at 508). For example, "'[a] claim will . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.'" *Nnadozie*, 730 F. App'x at 156 (alterations in *Nnadozie*) (quoting *Chacko*, 429 F.3d at 509).

But, exhaustion does not require that a judicial complaint match the EEOC charge with exactitude. To the contrary, the Fourth Circuit has "recognize[d] that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality[.]" *Balas*, 711 F.3d at 408; *see Sydnor*, 681 F.3d at 594 ("The exhaustion requirement should not become a tripwire for hapless plaintiffs."). Thus, "federal courts may still hear claims that the employee did not raise before the agency, as long as they are 'like or related' and grow out of the allegations during the pendency of the case before the agency." *Stewart*, 912 F.3d at 705 (quoting *Sydnor*, 681 F.3d at 594); *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit.").

Looking, as I must, to the four corners of the EEOC Charge, *Balas*, 711 F.3d at 407-08, plaintiff's EEOC Charge covers his retaliation claim, but not his claim for race discrimination. In his EEOC Charge, plaintiff named STA as his employer and identified retaliation as one of the bases for his complaint. ECF 10-2. Further, plaintiff claimed that he was subjected to a drug test "in retaliation for [his] opposition of race discrimination at the above named employer." *Id.* Therefore, to the extent that Count III is predicated on a claim of retaliation based on the drug testing incident, it is properly before the Court.

However, the allegations included in the EEOC Charge are not reasonably related to plaintiff's claim of race discrimination in Count I. *Id.* Plaintiff identified age, disability, and retaliation as the bases for his EEOC Charge. To be sure, the narrative contained in the EEOC Charge generally mentions plaintiff's "opposition to race discrimination" as a basis for the retaliatory drug testing that he underwent in April 2016. ECF 10-2. But, the Complaint alleges race discrimination based on discriminatory hiring and promotion. *See* ECF 1, ¶¶ 24, 39, 43. And, even with a generous construction of the narrative in the EEOC Charge, it contains no facts supporting a claim for discriminatory hiring or promotion.

Thus, the averments in the EEOC Charge would not put defendant on notice of a disparate treatment claim, on the basis of race, with respect to hiring and promotion. *See Miles*, 429 F.3d at 492 (finding that plaintiff failed to exhaust administrative remedies when she "did not check the retaliation box on her charge form, and the narrative explaining her charge made no mention of retaliation"); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (plaintiff failed to exhaust retaliation claim where the charge only alleged race discrimination); *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (plaintiff failed to exhaust Title VII claim for disparate hiring and training where the EEOC Charge asserted disparate disciplinary treatment); *Hodge v.*

*Walrus Oyster Ale House*, TDC-18-3845, 2019 WL 6069114, at *5 (D. Md. Nov. 15, 2019) (concluding that the plaintiff had failed to exhaust her Title VII failure-to-promote claim where the EEOC Charge focused only on disparate work conditions).

Accordingly, plaintiff has exhausted his administrative remedies as to Count III but not as to Count I. Consequently, I shall grant the Motion as to Count I.

### B. Failure to State a Claim

Defendant contends that the Complaint fails to state a plausible Title VII retaliation claim, asserting that the Complaint lacks "allegations directed with any specificity against the STA for retaliation." ECF 13 at 9. Likewise, STA maintains that plaintiff's § 1981 discrimination claim lodged in Count IV warrants dismissal because the Complaint "makes only conclusory allegations of discrimination without any facts to support any claim of adverse employment actions, or failure to promote or hire." ECF 10-1 at 13. Without any elaboration, plaintiff summarily asserts in his Opposition that he "has alleged sufficient facts to provide Defendant-STA with adequate notice of the claims against it[.]" *Id.* at 9; *see id.* at 10.

To state a claim of retaliation under Title VII, a plaintiff must allege "(1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her and (3) there is a causal connection between the protected activity and the adverse action." *Evans*, 936 F.3d at 195; *see Strothers*, 895 F.3d at 327; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *Okoli v. City of Balt*., 648 F.3d 216, 223 (4th Cir. 2011); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). At trial, the plaintiff must establish retaliation, either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.- E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

As indicated, a plaintiff must first allege that he engaged in protected activity. The Fourth Circuit has explained that, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *Navy Fed. Credit Union*, 424 F.3d at 406; *see Netter*, 908 F.3d at 937. "An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airport Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).

The second element is that of an "adverse action." In *Strothers*, 895 F.3d at 327, the Fourth Circuit explained that an "adverse *employment* action" is not the standard in a retaliation case. (Emphasis added.) In a retaliation claim, the standard for an adverse action is more expansive than for a substantive discrimination claim. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). Therefore, the adverse action "need not be employment or workplace-related in order to sustain a retaliation claim." *Strothers*, 895 F.3d at 327.

However, Title VII does not serve as "'a general civility code for the American workplace.'" *Burlington Northern*, 548 U.S. at 68 (citation omitted). Thus, it "does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009) (quoting *Burlington Northern*, 548 U.S. at 68). Nor does "a personal conflict alone . . . constitute retaliation." *Spencer v. Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).

Rather, to qualify as a materially adverse action in the retaliation context, the plaintiff must show that the defendant's action "'might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.'" *Burlington Northern*, 548 U.S. at 68 (citation omitted); *see Evans*, 936 F.3d at 195; *Hoyle*, 650 F.3d at 337. And, "there must be 'some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.'" *Ray*, 909 F.3d at 670 (quoting *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)); *see Burlington Northern*, 548 U.S. at 67.

The Fourth Circuit has found that "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion" constitute adverse actions. *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). The reassignment of job functions may also constitute an adverse action. *Young v. Montgomery Cty.*, PX-18-2054, 2019 WL 1596992, at *4 (D. Md. Apr. 15, 2019) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998)). But, "[a]bsent evidence that a new position is significantly more stressful than the last, vague allegations of stress resulting from reassignment cannot support a claim of discrimination under Title VII." *Boone*, 178 F.3d at 256. At a minimum, the plaintiff must demonstrate that "the reassignment had some significant detrimental effect on" the employee. *Id*.

To allege the requisite causation under Title VII, the plaintiff must plead that the retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Irani*, 767 F. App'x at 421. In other words, Title VII requires the plaintiff to allege that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362.

Ordinarily, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). Therefore, a "'lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action'" often "'negates any inference that a causal

connection exists between the two.'" *Id.* (citation omitted). Indeed, a lapse of two-and-a-half months between the protected activity and an adverse employment action "is sufficiently long so as to weaken significantly the inference of causation," although it does not preclude the plaintiff from establishing causation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

The Complaint falls far short of stating a plausible retaliation claim against STA. Plaintiff alleges that the ILA "created a targeted scheme to silence Plaintiff" due to his "vocal advoca[cy] against the discrimination and unfair treatment of African American and Asiatic longshoremen at the Port." ECF 1, ¶¶ 58, 59. And, the Complaint alleges that PAC retaliated against plaintiff by rejecting plaintiff's proof that he performed a urinalysis following an accident on August 8, 2016. *Id.* ¶ 74. But, those allegations do not pertain to STA. Indeed, there are no allegations that STA took adverse action against plaintiff in retaliation for having engaged in a protected activity.

In his Opposition, plaintiff argues that he has stated a retaliation claim against STA because "STA's Seniority Board implemented retaliatory actions against Plaintiff on behalf of ILA," namely placing Local 333 in trusteeship. ECF 11-1 at 9. Plaintiff's contention conflicts with the Complaint, which alleges that the ILA "created a target scheme to silence Plaintiff," ECF 1, ¶ 59, and the ILA "suspended the Union's officers and imposed a temporary trusteeship." *Id.* ¶ 66. The Complaint does not, however, assert that the "Seniority Board" is an entity of the STA, as opposed to the ILA.

Of import here, plaintiff cannot cure this defect through his Opposition. *See So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *accord Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993). And, in any event, the Complaint fails to allege with any

specificity the protected activities in which plaintiff engaged, or that those protected activities were temporally proximate to the alleged retaliatory acts. In short, the paucity of allegations concerning STA compels the dismissal of Count III.

Count IV of the Complaint, which lodges a claim under 42 U.S.C. § 1981, is likewise subject to dismissal. As noted, the framework for a race discrimination claim under § 1981 is the same as the framework for a claim under Title VII. *See, e.g.*, *Goode*, 807 F.3d at 626. As plaintiff does not allege direct evidence of discrimination, the *McDonell Douglas* burden-shifting framework applies.

Plaintiff must allege facts sufficient to state a claim, *i.e.*, that he (1) is a member of a protected class; (2) was performing at a satisfactory level; (3) suffered an adverse employment action; and (4) was treated differently from similarly situated employees ("comparators") outside the protected class. *Goode*, 807 F.3d at 626.

Plaintiff does not come close to stating a claim of discrimination against STA. Notably, the Complaint contains only one allegation concerning STA: "The ILA and Steamship Trade Association of Baltimore, Inc. (STA), negotiated collective bargaining agreements to the detriment of the African American and Asiatic members of the Union and its leadership." ECF 1, ¶ 61. This single, conclusory assertion does not amount to a plausible claim of race discrimination. Indeed, it is axiomatic that "[t]hreadbare recitals of the elements of a cause of action" do not satisfy Rule 8. *Iqbal*, 556 U.S. at 678.

Plaintiff repeatedly argues that a claim is plausible if the complaint's factual content permits a court "'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" ECF 11-1 at 9, 10 (quoting *Iqbal*, 556 U.S. at 678). That is a correct recitation of the law. But, plaintiff overlooks the preceding sentence in *Iqbal*, 556 U.S. at 678: "To survive a

motion to dismiss, a complaint must contain *sufficient factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" (Quoting Twombly, 550 U.S. at 570) (emphasis added). Because the Complaint sets forth no facts to support the inference that STA engaged in unlawful conduct, I shall grant the Motion as to Counts III and IV.

## IV. Conclusion

For the reasons stated above, I shall GRANT the Motion (ECF 10), with leave to amend. Accordingly, I shall deny, as moot, defendant's motion to quash (ECF 7). And, plaintiff will be afforded an opportunity to serve the ILA and PAC.

An Order follows.

Date: March 12, 2020                                    _____/s/_____
                                                              Ellen L. Hollander
                                                              United States District Judge